UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DAVID C. SHARP, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 07-2035 (RCL) |
| CAPITOL CITY BREWING COMPANY, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff David C. Sharp brings this action against defendant Capitol City Brewing Company ("Restaurant"), alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189. Before the Court are defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. Upon consideration of the motions, the replies, the oral arguments of counsel, the record of this case, and the applicable law, the Court concludes that each motion should be granted in part and denied in part, and that two of plaintiff's claims should be dismissed for lack of standing.

**I. Background**

Plaintiff is quadriplegic with very limited use of one of his arms and uses a wheelchair for mobility.[1] (Pl.'s Aff. [28-2] ¶ 2.) In October 2007, plaintiff visited defendant's restaurant at 1100 New York Avenue, NW in Washington, D.C. (*Id.*) On

---

[1] At the motions hearing of September 22, 2009, counsel represented that plaintiff could raise his right arm several inches and had no use of his left arm except for the fingers on that hand.

October 19, 2007, plaintiff sent a letter to the Restaurant to complain about architectural barriers to wheelchair access in the men's restroom of that restaurant. In the letter, he gave the Restaurant fifteen days to sign and return an agreement drafted by his attorney. (Letter of Oct. 19, 2007 [25-3].) Under the agreement, plaintiff would decline to sue the Restaurant under the ADA in exchange for the Restaurant's acknowledging architectural barriers, creating a plan to remedy the barriers, and sharing the plan with plaintiff. (*Id.*) The Restaurant responded nineteen days later with a note of apology and an explanation that it was planning to renovate the restroom anyway and would be sure to make it ADA compliant in the process. (Letter of Nov. 6, 2007 [25-3].) Plaintiff responded that the Restaurant did not comply with his demand, and he filed suit on November 6, 2007. (Letter of Nov. 8, 2007 [25-3].)

The Restaurant drafted architectural plans to renovate its restroom and provided plaintiff with those plans in January 2008. (Pl.'s Cross Mot. for Summ. J. [29] at 2.) However, plaintiff determined that these plans were not ADA-compliant and informed the Restaurant. (*Id.*) The Restaurant then commissioned new plans that, in plaintiff's opinion, would have rendered the restroom ADA-compliant if the Restaurant followed them exactly. (Pl.'s Cross Mot. for Summ. J. [29] at 2.)

Both parties moved for summary judgment, and the Court ruled on the motions after renovations to the restroom were completed in March 2009. (Pl.'s Cross Mot. for Summ. J. [29] at 2–3.) The Court denied the motions because neither party had provided evidence of compliance or non-compliance. (Order [24] at 1–2.) On April 6, 2009, the Restaurant filed a Renewed Motion for Summary Judgment [25], including photos of the newly renovated restroom. After visiting the restroom on April 21, plaintiff determined

that it still presented barriers to access and filed an opposition and cross-motion for summary judgment. (Pl.'s Cross Mot. for Summ. J. [29] at 3.)

Plaintiff claims five barriers to access:

(1) The grab rail next to the toilet ("water closet"[2]) is mounted above the maximum height allowed under the ADA Accessibility Guidelines ("ADAAG"). (Pl.'s Cross Mot. for Summ. J. [29] at 8.)

(2) A portable trash can is located next to the water closet, but this space must be clear of any obstructions to ease transfer from a wheelchair onto the water closet. (*Id.* at 5, 8.)

(3) The ADA-compliant toilet paper dispenser was empty during plaintiff's visit, whereas a second, non-ADA compliant dispenser mounted too far away for plaintiff to reach was full. (*Id.* at 4, 8.)

(4) The non-ADA compliant toilet paper dispenser mounted directly in front of the toilet juts out 6" from the wall. This dispenser reduces the depth of the stall to 52", which is 4" less than the required minimum depth and which inhibits the maneuverability of plaintiff's wheelchair. (*Id.*)

(5) A curtain mounted below the sink ("lavatory") violates the minimum required clearance from the floor to the lavatory. (*Id.* at 8 & n.2.)

Plaintiff asks the Court to order the removal of the alleged barriers and to order the Restaurant to provide ADA awareness training to its employees. (*Id.* at 9.)

---

[2] The ADA Accessibility Guidelines refer to toilets as "water closets" and sinks as "lavatories." *See* 28 C.F.R. pt. 36, App. A, 4.16, 4.19. This opinion continues that practice for the sake of consistency.

**II. Legal Standard**

A court considering a motion for summary judgment should render judgment if the evidence shows no genuine issue of material fact. FED. R. CIV. P. 56(c). The court must take the facts in the light most favorable to the non-moving party, granting it "all justifiable inferences," and then determine if there remains a genuine issue of material fact upon which a jury could hold either way. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986). In determining whether or not such an issue exists which could determine the outcome of the suit, the primary consideration is the substantive law on the claim. *Id.* at 248. However, mere unsupported allegations or denials will not create a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Under the ADA, no owner or operator of a place of public accommodation may, on the basis of a disability, discriminate against a person by denying him "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of that place of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" includes "a failure to remove architectural barriers . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(4). The ADAAG sets forth architectural specifications and other requirements for restrooms in places of public accommodation. *See* 28 C.F.R. pt. 36, App. A.

Though neither party has raised the issue of standing in the motions under consideration, "the [C]ourt has an independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1152 (2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Plaintiff, as the party invoking the Court's jurisdiction, has the burden to show standing. *Lujan v. Defenders of Wildlife*,

4

504 U.S. 555, 561 (1992). In order to have standing, a plaintiff must have suffered actual or imminent "injury in fact." *See id.* at 560 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "Injury in fact" requires the plaintiff himself to be "among the injured." *Lujan*, 504 U.S. at 563. To establish such injury on a motion for summary judgment, "[the plaintiff] must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* at 561. Therefore, for his claims to survive a motion for summary judgment, the plaintiff must present to the Court "specific facts" that demonstrate injury *to the plaintiff*. Defendant's alleged violation of the ADA is, by itself, not enough to aver "injury in fact." *Cf. Allen v. Wright*, 468 U.S. 737, 754 (1984) (Government's violation of the law, by itself, does not confer standing on adverse parties).

**III. Discussion**

*A. Standing*

The Court finds that plaintiff lacks standing for his claims related to the grab rails and the portable trash can next to the water closet. After addressing standing, the Court will consider plaintiff's remaining claims and his requested relief.

In order to have standing, plaintiff must have suffered actual or imminent "injury in fact." *See Lujan*, 504 U.S. at 560. He cannot claim injury on behalf of another person. *See id.* at 563. Because plaintiff's quadriplegia causes him to have only very limited use of his arms and hands, he cannot point to an "injury in fact" arising out of the height of the grab rail or the placement of a portable trash can next to the water closet. The Court will address standing for each of the five claims.

*1. Grab Rail*

Plaintiff claims that the grab rail next to the water closet is too high off the ground and thus violates the ADAAG. Consideration of the goals of the ADAAG's technical specifications and of the nature of plaintiff's disability reveals that he cannot show "injury in fact" from grab rails that violate the height standards.  The technical requirements that the ADAAG imposes on the placement of grab rails are meant to help disabled persons maintain their balance and to facilitate a wheelchair user's transfer from his wheelchair to the water closet.  *See* 28 C.F.R. pt. 36, App. A, A4.16.4 & fig. A6; *id.* pt. 36, App. A, A4.26.1.  Plaintiff cannot use the grab rail for these purposes.  He has no use of his legs and uses a wheelchair, so the grab rail is unnecessary to maintain his balance, and he does not claim that the grab rail's height keeps him from using it for this purpose.  Furthermore, based upon counsel's representations of plaintiff's disabilities at the motions hearing, plaintiff has such limited use of his arms and legs that he could not transfer himself to the water closet even with a compliant grab rail.  To do this, he requires an assistant, in which case it is unclear how the grab rail would assist transfer.  Plaintiff has failed to set forth specific facts showing that the height of the grab rail causes him "injury in fact", thus he does not have standing for this claim.

*2. Trash Can*

Plaintiff claims that a portable trash can next to the water closet violates the ADAAG because the space next to the water closet must be clear for wheelchair users to transfer themselves to the water closet. (Pl.'s Cross Mot. for Summ. J. [29] at 5.)  *See* 28 C.F.R. pt. 36, App. A, A4.16.4 fig. A6(b) (showing mechanics of side transfer).  As

established above, plaintiff's disability is such that he cannot transfer himself to a water closet whether a trash can is in his way or not.  As plaintiff's counsel admitted, if an assistant is with him, there is no reason the assistant cannot move this portable trash can to facilitate plaintiff's transfer.  The trash can does not prevent plaintiff from engaging in any activity that he could otherwise perform, therefore he has shown no "injury in fact."

*3. Side Toilet Paper Dispenser*

Plaintiff alleges that the ADA-compliant toilet paper dispenser to the right of the water closet was empty during his visit of April 21, 2009, whereas a non-compliant dispenser too far away for him to reach was full.  (Pl.'s Cross Mot. for Summ. J. [29] at 4.)  Plaintiff's disability raises the question of whether he is unable to reach the ADA-compliant dispenser without any assistance, which would prevent him from having standing for this claim.  However, based on counsel's representation of plaintiff's use of his arms, plaintiff has standing for this claim because the Court will grant him the reasonable inference that he can reach the dispenser.  *See Wasco v. T Corp.*, No. 04-0099, 2008 WL 53707, at *2 (D.D.C. Jan. 3, 2008) (plaintiff has burden to point to facts that "create at least a genuine dispute" about elements of constitutional standing).

*4. Front Toilet Paper Dispenser*

Plaintiff complains that the dispenser directly in front of the water closet protrudes 6" from the wall, which reduces the depth of the stall to 52", or 4" less than what the ADAAG requires.  (Pl.'s Cross Mot. for Summ. J. [29] at 4.)  His counsel clarified at the motions hearing that he must be able to situate his wheelchair directly in

7

front of the toilet in order to empty a urinal container into the water closet, and that the protruding dispenser prevents him from doing so. Plaintiff sufficiently alleges an "injury in fact," thus he has standing for this claim.

*5. Curtain Below the Lavatory*

Plaintiff complains that the space below the front lip of the lavatory must be clear for a distance of 29", but defendant has placed a curtain in that space. Plaintiff argues that this curtain could get caught in the wheels or power controls of his wheelchair. (Pl.'s Cross Mot. for Summ. J. [29] at 5 n.1). The Restaurant pointed out at the hearing that plaintiff never alleged that the curtain ever did get caught in his wheelchair, but this is not the injury on which standing is based in this case. A plaintiff may base standing on a "reasonable concern about the effects" of the defendant's actions if those actions directly affect the plaintiff's interests. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.* 528 U.S. 167, 183–84 (2000). Here, plaintiff is reasonably concerned that the curtain could damage his wheelchair or that something lying behind the curtain would injure him if he rolled his wheelchair under the lavatory. This apprehension prevents plaintiff from attempting to use the lavatory, which constitutes the "injury in fact" that serves as the basis for standing for this claim.

*6. Conclusion*

Plaintiff failed to sufficiently allege "injury in fact" for two of his five claims, therefore the Court has jurisdiction to review only the remaining three. Plaintiff confirms his lack of standing when he states that two of the alleged barriers in the Restaurant will

...

prevent "many people with disabilities" from being able to use the water closet, but does not state that they inhibit his own access. (Pl.'s Aff. [28-2] ¶ 12.) Despite plaintiff's leadership position in a national association for disabled persons (*Id.* ¶ 3), he may resort to federal courts only to redress his own injuries when suing in his personal capacity. *See Wasco*, 2008 WL 53707, at *2 ("The ADA does not transform every disabled person into a roving paladin."). The Court now turns to the three remaining claims and plaintiff's requested relief.

*B. Side Toilet Paper Dispenser*

Plaintiff claims that when he visited the Restaurant on April 21, 2009, the ADA-compliant toilet paper dispenser to the right of the water closet was empty, but the toilet paper dispenser directly in front of the water closet, which was too far away for him to reach, was full. (Pl.'s Cross Mot. for Summ. J. [29] at 4.) The Restaurant argues that if the ADA-compliant dispenser is empty, then plaintiff can simply request toilet paper from the Restaurant's staff. (Def.'s Reply [30] at 2.) Plaintiff responds that forcing him to ask for assistance when non-disabled people need not do so is not "equal access" under the ADA. (Pl.'s Reply [33] at 4.)

The ADAAG requires that "[i]f controls, dispensers, receptacles, or other equipment are provided, then at least one of each shall be on an accessible route and shall comply with 4.27." 28 C.F.R. pt. 36, App. A, 4.22.7. The ADAAG also sets requirements for a dispenser's accessibility to disabled persons. *Id.* pt. 36, App. A, 4.27. As far as the Court can tell, the side toilet paper dispenser meets these requirements, and plaintiff does not dispute that it is ADA-compliant. The implementing regulations of the

ADA state that a public accommodation must "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act . . . ." *Id.* § 36.211(a).  However, the regulations do not prohibit "isolated or temporary interruptions in service or access due to maintenance or repairs."  *Id.* § 36.211(b).  The regulations therefore grant the Restaurant a reasonable amount of time to "maintain" the ADA-compliant toilet paper dispenser, which in this case means to ensure it is loaded with toilet paper.  The Restaurant has provided an accessible dispenser, and plaintiff has failed to show that this one instance of the dispenser being empty was anything more than an "isolated or temporary interruption[] in . . . access," so his claim must be denied.

*C. Front Toilet Paper Dispenser*

Plaintiff claims that the toilet paper dispenser directly in front of the water closet protrudes 6" from the wall, which reduces the depth of the toilet stall to less than the minimum of 56".  (Pl.'s Cross Mot. for Summ. J. [29] at 4.)  *See* 28 C.F.R. pt. 36, App. A, 4.17.3 & fig. 30(a).  Due to plaintiff's limited use of his arms and hands, he must be able to situate himself directly in front of a water closet in order to empty a urine container.  (Pl.'s Aff. [34-1] ¶ 4.)  The dispenser, he argues, prevents him from doing so because it juts into his shoulder when he tries to maneuver into position.  The Restaurant argues that the ADAAG refers to unobstructed *floor or ground* space, and because the toilet paper dispenser is mounted well above the floor, it does not violate the guidelines.  (Def.'s Reply [30] at 2.)

The Restaurant's argument ignores the language from the ADAAG that the Restaurant quoted to the Court: "Clear Floor Space" is defined as "[t]he minimum unobstructed floor or ground space required *to accommodate a single, stationary wheelchair and occupant*." (*Id.* (quoting 28 C.F.R. pt. 36, App. A, 3.5) (emphasis altered).) The unobstructed floor space and minimum depth requirements are clearly calculated to permit a wheelchair to maneuver in front of the water closet, and the Restaurant's overly technical argument would eviscerate this goal.

The Court declines to grant summary judgment on this issue because a disputed issue of material fact remains. FED. R. CIV. P. 56(c). The Restaurant, relying on plaintiff's photograph (Pl.'s Cross Mot. to Dismiss [28-6] Ex. D), argues that the dispenser is mounted above the height of the wheelchair's handles and thus does not inhibit maneuverability. (Def.'s Reply [30] at 2 n.1.) Plaintiff contends that the dispenser hits his shoulder at this height, which prevents him from moving into position in front of the water closet. (*See* Pl.'s Cross Mot. for Summ. J. [28-6] Ex. D.) Granting all justifiable inferences to the non-moving party in assessing each party's respective motion for summary judgment, the Court comes to opposite conclusions on each motion because the evidence supplied by plaintiff's photograph is inconclusive.[3] Therefore, a dispute of material fact remains, and both parties' motions for summary judgment on this issue will be denied.

---

[3] Nothing in plaintiff's supplemental affidavit [34-1] alters this conclusion. In that affidavit, plaintiff also states that the space directly in front of the water closet must be clear so an assistant can help him transfer from his wheelchair to the water closet. (Pl.'s Aff. [34-1] ¶ 5.) Plaintiff did not raise this argument in his motions or at the hearing, thus the Restaurant has not had the opportunity to respond. Therefore, the Court will not address this argument.

*D. Curtain Below the Lavatory*

Plaintiff complains that a curtain hanging below the lavatory is a barrier to access because the space from the floor to the bottom edge of the lavatory is supposed to be clear for a distance of 29". (Pl.'s Reply [33] at 5.) 28 C.F.R. pt. 36, App. A, 4.19.2 & fig. 31. The Restaurant argues that the curtain lifts to allow a wheelchair to roll underneath the lavatory. (Def.'s Reply [30] at 3.)

Although a fabric curtain might not impede access in the same way that a hard barrier would, plaintiff points out that a curtain can easily get caught in a wheelchair's wheels or power controls. (Pl.'s Cross Mot. for Summ. J. [29] at 5 n.1.) Plaintiff's counsel also pointed out at the hearing that a person in a wheelchair would be apprehensive about rolling his legs into a curtain without any knowledge of what might lie behind it. The Restaurant argues that plaintiff did not allege that the curtain actually did get caught in his wheelchair, but this is not the meaning of "accessibility." Plaintiff should be able to roll his wheelchair under the lavatory confident that no damage or major inconvenience will occur as a result. Because he cannot do so without such apprehension, the curtain poses a barrier to access that prevents him from using the lavatory, and plaintiff's motion for summary judgment on this claim will be granted.[4]

---

[4] The Restaurant's counsel alerted the Court that the Restaurant has already removed the curtain, which, she argued, mooted the issue. The Court clarifies here that the issue is not moot.

First, the Court may assume that the curtain is still in place, and chooses to do so here. The Restaurant did not dispute the curtain's placement when it contested plaintiff's Rule 7(h) Statement of Material Facts [28-1]. (Def.'s Reply [30] at 6.) Pursuant to the Court's Local Rules, a court ruling on a motion for summary judgment "may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted" by the opposing party. D.D.C. R. 7(h). The Court sees no reason not to make such an assumption, especially when counsel did not bring the fact of the curtain's removal to the Court's attention until oral argument.

Second, subsequent acts by the parties can moot an issue if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). There is no evidence that the Restaurant is prevented from hanging the curtain again, so the issue is not moot.

*E. ADA Awareness Training*

Plaintiff requests that the Court order the Restaurant to supply ADA awareness training to its employees. Counsel argued at the hearing that without such training the Restaurant's employees may engage in violations of the ADA, for example by stacking boxes in a hallway such that a wheelchair user could not pass through; by placing the portable trash can back into position next to the water closet; or by placing objects beneath the lavatory, which would prevent wheelchair users from washing their hands. Plaintiff cites to two cases in support of his request. In *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1078–79 (9th Cir. 2004), a quadriplegic plaintiff sued a movie theater for refusing to remove another patron from the "companion seat" next to the space reserved for wheelchair users, which prevented the plaintiff's wife from sitting with him. The Ninth Circuit upheld an injunction requiring the theater to reserve the companion seats for companions of wheelchair users up to ten minutes before the movie start time. *Id.* at 1079. In *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 121–23 (N.D.N.Y. 2000), the plaintiff, a blind woman, requested injunctive relief after employees of Wal-Mart and Sam's Club told her she could not enter those stores with her service dog.

Neither the cited cases nor plaintiff's allegation of hypothetical barriers to access supports plaintiff's request for court-ordered ADA awareness training. *Fortyune* and *Stan* involved discriminatory policies, but here, plaintiff does not allege discriminatory policies or treatment by any of the Restaurant's employees. He argues instead that their lack of training may cause them to erect further barriers to access. However, he fails to show that a lack of employee training has led to any barriers to access. Although he states that a lack of training led employees to place the portable trash can next to the

toilet, the Court has established that plaintiff lacks standing for that claim. Although the ADA-compliant toilet paper dispenser was empty during his visit, plaintiff has not shown that this temporary interruption of access was more than an isolated incident. Plaintiff does not allege that employees have in fact stacked boxes in the hallways or under the lavatory, and the Court will not order ADA awareness training on the basis of a hypothetical injury. The Court is confident that the injunctive relief granted in this case—an order to maintain the space below the lavatory free of obstructions—will sufficiently redress the claim on which plaintiff has prevailed.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [25] will be GRANTED in part and DENIED in part. Plaintiff's Cross-Motion for Summary Judgment [29] will be GRANTED in part, DENIED in part, and DISMISSED in part for lack of standing.

A separate order shall issue this date.

**Date**

January 14, 2010.

                                                                    /s/
                                               ROYCE C. LAMBERTH
                                               Chief Judge
                                               United States District Court